UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCOTT KELLY HANSEN,

    Plaintiff,

v.

HARLEY G. LAPPIN, *et al.*,

    Defendants.

Civil Action No. 10-1254 (CKK)

## MEMORANDUM OPINION

This matter is before the Court on defendants' motion to dismiss or, in the alternative for summary judgment. For the reasons discussed below, the motion will be granted.

### I. BACKGROUND

The Office of Enforcement Operations ("OEO"), Criminal Division, United States Department of Justice ("DOJ"), operates the Federal Witness Security Program ("Program"). Mem. of P. & A. in Supp. of Fed. Defs.' Mot. to Dismiss or in the Alternative for Summ. J. ("Defs.' Mem."), Decl. of Paul M. O'Brien ("O'Brien Decl.") ¶ 1. The Program "provide[s] for the safe and covert housing and movement of government witnesses . . . whose lives have been placed in danger by virtue of their being witnesses . . . in legal proceedings against any person(s) alleged to have participated in organized criminal activity or other serious offenses." *Id.*, O'Brien Decl. ¶ 4; *see* 18 U.S.C. § 3521(a)(1) (authorizing the Attorney General "to provide for the relocation and other protection of a witness . . . for the Federal Government or for a State government in an official proceeding concerning an organized criminal activity or other serious

1

offense"). "OEO employees perform decision making functions such as approving admissions to the Program and acting as an oversight, liaison and ombudsman authority." Defs.' Mem., O'Brien Decl. ¶ 5. Federal Bureau of Prisons ("BOP") officials manage the physical custody of imprisoned government witnesses, and United States Marshals Service ("USMS") personnel handle witnesses who are not imprisoned. *Id.*, O'Brien Decl. ¶ 5. The Attorney General "shall take such action as [he] determines to be necessary to protect the person involved from bodily injury and otherwise to assure the health, safety, and welfare of that person," 18 U.S.C. § 3521(b)(1), but he must disclose a Program participant's identity and location under limited circumstances:

> [T]he Attorney General shall, upon the request of State or local law enforcement officials . . ., without undue delay, disclose to such officials the identity, location, criminal records, and fingerprints relating to the person relocated or protected when the Attorney General knows or the request indicates that the person is under investigation for or has been arrested for or charged with an offense that is punishable by more than one year in prison or that is a crime of violence.

18 U.S.C. § 3521(b)(1)(G) (emphasis added).

In 1981, plaintiff was sentenced by a state court in Ohio to an aggregate term of 4 ½ to 25 years' imprisonment, and he was admitted to the Columbus Correctional Facility on July 31, 1981. Compl., Attach. (Letter from Chris Gerren, Parole Program Specialist/Fugitive Coordinator, Ohio Department of Rehabilitation and Correction, to plaintiff dated June 5, 2009) ("Gerren Letter") at 1. He was released on August 27, 1984, to begin service of a one-year parole term, was arrested on September 21, 1984, and was charged with bank robbery, a federal offense. *Id.*, Attach. (Gerren Letter) at 1. He was sentenced in the United States District Court for the

Northern District of Ohio on September 5, 1985, to a 10-year term of imprisonment. Defs.' Mem., Decl. of Kerry Kemble ("Kemble Decl.") ¶ 5. Ohio authorities declared plaintiff a "violator in custody" and lodged a detainer with the BOP. Compl., Attach. (Gerren Letter) at 1. By filing the detainer, Ohio declared its "intention to pursue [plaintiff's] eventual extradition to Ohio upon completion of [his] federal term." *Id.*, Attach. (Gerren Letter) at 2.

Upon plaintiff's release from BOP custody on May 24, 1991, he was to begin serving his one-year term of parole. Compl., Attach. (Gerren Letter) at 1. He reported to Ohio parole authorities on June 5, 1991, and on July 20, 1991, he was arrested and charged with "numerous felonies." *Id.*, Attach. (Gerren Letter) at 1. Again, on October 10, 1991, Ohio authorities declared plaintiff a "violator in custody," an event "which tolled or stopped . . . service time on [his] original sentence from 1981." *Id.*, Attach. (Gerren Letter) at 1.

Bank robbery apparently was one of the felonies with which plaintiff was charged in 1991. "[O]n October 8, 1991, [p]laintiff was sentenced in the [United States District Court for the] Northern District of Ohio to a 132-month sentence with a three-year supervised release term for Bank Robbery." Defs.' Mem., Kemble Decl. ¶ 5.

Plaintiff was "a witness on behafe [sic] of the State of Ohio, in a very high profile death-penalty murder trial in 1993."[1] Compl. at 1. On June 8, 1994, he "was authorized for Program

---

[1] Plaintiff states that he testified as a government witness in 1996 "in U.S. District Court, Toledo[,] Ohio, in another very high profile case, that involved high ranking members of the Mexican-Mafia, and other members of organized crime." Pl.'s Aff. and Objection to Federal Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. at 9; *see* Pl.'s Aff. and Objection to Federal Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. at 9. He further alleges that the United States Attorney General "received (threat assessments) from the (D.E.A.) and the U.S. Attorney for the Northern District of Ohio" indicating "the threat, and very real threat this Plaintiff would face if returned to the (State of Ohio) and some other danger areas." Reply to

(continued...)

3

services while incarcerated . . . and . . . for relocation services . . . on October 6, 1997." Defs.' Mem., O'Brien Decl. ¶ 8. In anticipation of his release, plaintiff filled out a USMS form supplying "information . . . relevant to his participation in the . . . Program." *Id.*, Decl. of Harvey Smith ("Smith Decl.") ¶ 5. According to the USMS, plaintiff stated on the form that he had prior bank robbery arrests in 1984 and 1991, and made no mention of any arrest in Ohio. *Id.*, Smith Decl. ¶ 5. Plaintiff signed a Memorandum of Understanding ("MOU") with the Attorney General on June 11, 1997, and in so doing certified that he had no known outstanding court orders or obligations.[2] *Id.*, Smith Decl. ¶ 6. According to plaintiff, he asked the USMS "to check and make sure that there were no outstanding warrants . . . or detainer[s] out of Ohio," and was informed by the USMS, the BOP and the OEO "that as a matter of Policy . . . this is done." Compl. at 2. He allegedly was told that he had "(NO) warrants[] . . . or detainers pending or seeking [his] custody, and nothing from the State of Ohio what-so-ever." *Id.*

According to defendants, plaintiff had several opportunities to learn of the existence of the Ohio detainer. When an inmate "arrives at his first BOP facility, staff . . . request a RAP sheet from the FBI," and staff review the RAP sheet with the inmate's presentence investigation

---

[1](...continued)
Defs.' Reply Mot. Filed on (01-06-11) to Dismiss, or in the Alternative, for Summ. J. at 3. According to plaintiff, there is "a current $50,000.00 contract of money to be paid for [his] murder." Pl.'s Aff. and Objection to Federal Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. at 9.

[2] A Program participant enters into an MOU with the Attorney General before protection is provided. 18 U.S.C. § 3521(d)(1). Among other matters, the MOU must set forth the participant's responsibilities, including outstanding legal obligations such as child custody and visitation, 18 U.S.C. § 3521(d)(1)(G), and "any probation or parole responsibilities." 18 U.S.C. § 3521(d)(1)(H). In addition, the participant must agree "not to commit any crime," 18 U.S.C. § 3521(d)(1)(B), and to "comply with legal obligations and civil judgments against [him]," 18 U.S.C. § 3521(d)(1)(D).

report to determine whether there are "possible pending charges or sentences in connection with that inmate." Defs.' Mem., Kemble Decl. ¶ 8. "Additionally, it is routine procedure for BOP staff to provide each inmate a SENTRY Sentence Monitoring Computation Data short shortly after [he arrives at] a BOP facility." Id., Kemble Decl. ¶ 9. The BOP's declarant represents that plaintiff's 1991 Sentence Monitoring Computation Sheet "would have reflected that [he] had a detainer." Id., Kemble Decl. ¶ 9. "Besides . . ., an inmate can ask his Unit Team staff about outstanding warrants or any other information contained in his central file at any time." Id., Kemble Decl. ¶ 11. In response to an inmate's inquiry, his "Unit Team will either check the inmate's file or SENTRY for the information or will make the file available for the inmate's review." Id., Kemble Decl. ¶ 11. "No statute, regulation or procedure, requires the [USMS] to search for, file, administer or inform [a Program participant] of state detainers lodged against him with the [BOP]." Id., Smith Decl. ¶ 4. Similarly, "[n]o statute, regulation or procedure requires OEO to inform Program participants of warrants or detainers lodged against them." Id., O'Brien Decl. ¶ 7.

Plaintiff was released from BOP custody on October 17, 1997, without notice to Ohio authorities. Compl., Attach. (Letter from Joseph P. Van Kempen, Assistant Administrator, Inmate Monitoring Section, BOP, to Cynthia Jones, Acting Parole Program Specialist, Ohio Department of Rehabilitation and Correction, dated April 23, 1998) ("Van Kempen Letter"). The Program placed plaintiff in Providence, Rhode Island. Pl.'s Aff. and Objection to Fed. Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 7.

The USMS terminated plaintiff's Program participation on March 10, 1998, Defs.' Mem., O'Brien Decl. ¶ 8, "because he failed to attend substance abuse counseling, . . . admitted to drug

5

use, and . . . tested positive for cocaine and marijuana use." *Id.*, Smith Decl. ¶ 8. Plaintiff "sign[ed] his notice of termination [in] June of 1998, after he had been arrested for committing several bank robberies, which would have presented additional grounds for his dismissal from the [P]rogram." *Id.*, Smith Decl. ¶ 8; *see id.*, Kemble Decl., Ex. 1 (Sentence Monitoring Computation Data) at 1-5. "On February 11, 2000, [p]laintiff was sentenced in the [United States District Court for the] District of Rhode Island for seven counts of Bank Robbery and one count of Escape From an Institution to Which he was Confined," and the court imposed a sentence of "188 months with three years['] supervised released for each of his bank robbery counts to run concurrent[ly] with each other and 33 months with three years['] supervised release for escape, to run consecutive[ly] to the 188 month terms." *Id.*, Kemble Decl. ¶ 5.

According to plaintiff, in 2005 or 2008, Compl. at 2, he discovered that the State of Ohio had issued a parole violator warrant in 1991, *see id.*, Attach. (State Warrant, Institution No. SOCF-164005, dated October 31, 1991), which had been lodged as a detainer but misfiled by BOP staff, *see id.*, Attach. (Van Kempen Letter). BOP staff apparently "placed the warrant paperwork in the wrong section of the inmate Central File." Defs.' Mem., Kemble Decl. ¶ 10. Due to this error, the BOP failed to notify Ohio authorities prior to plaintiff's release from BOP custody on October 17, 1997.[3] *See* Compl., Attach. (Van Kempen Letter) at 1. Ohio then declared plaintiff "a violator at large effective April 7, 1998, and a warrant [was] issued for his arrest." *Id.* Ohio since has re-issued its warrant, which the BOP has lodged as a detainer. Defs.' Mem., Kemble Decl. ¶ 12; *see id.*, Ex. 8 (State Warrant, Institution No. A164005, dated August

---

[3] The BOP was notified on October 16, 1997, that plaintiff's sentence had been reduced to time served, and, accordingly, released him on October 17, 1997. Compl., Attach. (Van Kempen Letter).

6

31, 2005, and Detainer Action Letter).

Plaintiff "[c]urrently . . . is housed at a BOP contract facility . . . in Stillwater, Minnesota," Defs.' Mem., Kemble Decl. ¶ 6, and "is scheduled for release in January 2014." *Hansen v. Collins*, No. 2:09-cv-00517, 2010 WL 3702558, at *1 (S.D. Ohio Sept. 16, 2010).[4] He asserts that "he has done everything possible Administratively to bring this matter to a safe resolution," yet no one "will take any action to correct this matter." Compl. at 3. He alleges that the BOP, the USMS, and the OEO have placed his life at risk, apparently by failing to inform him of the existence of the Ohio detainer which ultimately will effect his return to Ohio. He brings this action under the Federal Tort Claims Act, *see* 28 U.S.C. §§ 2671-80, and demands damages of $15,000 as compensation for defendants' "gross negligence, and deprivation of due process in violation of plaintiff[']s [F]ourteenth [A]mendment protections," stemming from the alleged mishandling of the Ohio detainer. Compl. at 3. In addition, plaintiff "seek[s] Judicial Review . . . on the decision to terminate, or reinstate this plaintiff to the Witness Protection Program." Supp. Mem. [Dkt. #7] at 1.

## II. DISCUSSION

For purposes of this Memorandum Opinion, the Court presumes, without deciding, that

---

[4] Plaintiff filed an action against the Ohio Department of Rehabilitation and Correction ("ODRC") in the United States District Court for the Southern District of Ohio, and the court construed his claim as one "that ODRC is acting with deliberate indifference to a substantial threat to his safety, in violation of the Eighth Amendment," because "he will be in grave danger if returned to Ohio because of testimony he gave during the 1990s." *Hansen*, 2010 WL 3702558, at *1. The case was dismissed without prejudice. *Id.* at *4. Noting that plaintiff's success on his Eighth Amendment claim requires proof of the ODRC's awareness of a risk to his safety and its deliberate disregard thereof, the court determined that a decision "at a time closer to [P]laintiff's release," roughly one year prior to his release in 2014, was appropriate. *Id.*

7

plaintiff has named the proper defendant,[5] that his complaint is timely filed,[6] and that this district is the proper forum for resolution of his claims.[7]

### A. Plaintiff's Negligence Claim Under the FTCA

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212(1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *see Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). The FTCA is one example of an express waiver of sovereign immunity, allowing the United States to be held liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1346(b)(1),

---

[5] The United States is the only proper defendant to a complaint filed under the FTCA, yet plaintiff names the Directors of the BOP, the USMS, and the OEO as parties to this action, *see* Compl. (Caption). This is a defect easily addressed by amendment of the complaint, which plaintiff is willing to do, *see* Pl.'s Opp'n at 2, and the Court declines to dismiss this action for plaintiff's failure to name the United States.

[6] Plaintiff claims to have learned of the Ohio detainer as early as 2005, *see* Compl. at 2; *see* Pl.'s Opp'n at 3, notwithstanding his inquiries to BOP staff over the years, who "always said (NO) there is nothing in the system or file here." Pl.'s Opp'n at 6. Defendants' declarant asserts that plaintiff did, should have, or could have learned of the Ohio detainer at several points during his time in BOP custody, Def.'s Mem., Kemble Decl. ¶¶ 8-9, 11. The date on which plaintiff learned of the existence of the Ohio detainer is unclear, and the Court neither will dismiss nor will grant summary judgment for defendants on timeliness grounds.

[7] Even if the events giving rise to plaintiff's FTCA claim occurred in Arizona as defendants suggest, *see* Defs.' Mem. at 6, plaintiff's choice of forum is entitled to some deference. *See Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 531 (1947). Moreover,"[a]ll decisions, or orders, concerning this plaintiff came out of the Central Office of the (BOP) and the Central Office of the (USMS), and approved, an[d] coordinated by (OEO) at Main Justice . . . within the District of Columbia," and, according to plaintiff, documents relevant to his claims are located in the District of Columbia. Pl.'s Opp'n at 2. The Court will deny defendants' motion to dismiss for improper venue.

8

for certain, but not all, tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). For example, "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."[8] *Meyer*, 510 U.S. at 478.

A federal district court addressing an FTCA action must apply the law of the state, presumably in this case the District of Columbia, in which the alleged tortious conduct occurred.[9] *See* 28 U.S.C. § 1346(b). The Court, then, must "ask whether a cause of action exists under the District of Columbia law for the injuries [plaintiff] alleges." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1159 (D.C. Cir. 1985) (citing *Carlson v. Green*, 446 U.S. 14, 23 (1980)).

---

[8] Plaintiff's demand for monetary damages for alleged constitutional torts committed by defendants Harley G. Lappin, John Clark and Paul O'Brien in their official capacities must be denied. The FTCA does not operate as a waiver of sovereign immunity for constitutional torts. *Meyer*, 510 U.S. at 478. Furthermore, the "United States and its . . . officers shall not be subject to any civil liability on account of any decision to provide or not provide [Program] protection." 18 U.S.C. § 3521(a)(3).

[9] Defendants assert that the place where the relevant events occurred was Arizona, as plaintiff happened to be incarcerated at the Federal Correctional Institution in Phoenix immediately prior to his release in October 1997. Def.'s Mem. at 7-8; *see id.*, Kemble Decl., Ex. 1 (Inmate History) at 3. The apparent misfiling of the Ohio detainer would have occurred at FCI Phoenix. *Id.*, Kemble Decl. ¶ 10. Plaintiff counters that "[a]ll decisions or orders concerning [him] came out of the Central Office of the (BOP) and the Central Office of the (USMS), and approved, an[d] coordinated by (OEO) at Main Justice. All located within the District of Columbia. And as in 1997, . . . all files, documents, and classified threat assessments are located and held in the District of Columbia." Pl.'s Opp'n at 2. The elements of a negligence claim the two jurisdictions are substantially similar, however. *Compare Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C. 2001) ("Generally, in order to prevail on a claim of negligence, the plaintiff must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff."), *with Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983) (quoting W. Prosser, Handbook on the Law of Torts § 30, at 143 (4th ed. 1971)) ("Ordinarily, a plaintiff may maintain an action in negligence if he proves . . . [a] duty, or obligation . . . requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks," defendant's failure to meet that standard, a "reasonably close causal connection between the conduct and the resulting injury," and "actual loss or damage.").

Here plaintiff alleges negligence, and there are three elements to a negligence claim under District of Columbia law: "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (internal quotation marks and citations omitted).

Defendants contend that plaintiff fails to "allege that any of the [d]efendants had a duty to inform him of any outstanding warrants before he was released from prison in 1997," Defs.' Mem. at 7, a defect which prevents him from maintaining a negligence claim, *id.* at 8.[10] Next, defendants argue that plaintiff "is unable to prove causation" because he "fails to allege how [d]efendants' actions caused" any risk to his safety. *Id.* The Court concurs.

Plaintiff claims not to have known of an outstanding obligation in Ohio, and he faults defendants for failing to advise him of the existence of the Ohio detainer. He asserts that defendants "had a duty, and standard of care, to make certain, and to insure that the very state the government was seeking to relocate this plaintiff from (Ohio forever), did not . . . have an active . . . warrant, and detainer . . . filed with the (BOP)." Pl.'s Opp'n at 7. He opines that, "when the U.S. Attorney made the determination to relocate & protect this plaintiff, the government [at time of his release in 1997] had a duty of care, to insure what the government was setting out to do would not be undone by the very state that the government was relocating this plaintiff for

---

[10] Although defendants move to "dismiss [p]laintiff's FTCA claims for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6), *see* Defs.' Mem. at 9, because "matters outside the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 12(d), the motion is treated as one for summary judgment under Fed. R. Civ. P. 56. Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

protection from." Reply to Defs.' Reply Moti.Filed on (01-06-11) to Dismiss, or in the Alternative, for Summ. J. at 3. In other words, because his testimony as a government witness placed him in danger, defendants are obligated to protect him, and to meet their obligation, they must take action to prevent his return to Ohio at any time under any circumstances, regardless of his termination from the Program. He places the burden on defendants to "step-up and resolve a minor parole rule violation," Pl.'s Opp'n at 9, which he deems "a big mistake on the part of Ohio parole officials," *id.* at 3. Conspicuously absent from plaintiff's submissions is any citation to legal authority or material in the record to support these assertions.

Plaintiff cannot overcome defendants' showing that neither OEO, USMS nor BOP has any duty to search for or inform plaintiff of a state detainer. Nor does plaintiff show that these defendants can override the Ohio authorities' clear intention to secure his return to Ohio upon his release from federal custody. If plaintiff were returned to Ohio, it would occur upon the execution of the Ohio warrant which has been lodged with the BOP as a detainer. As defendants state, "[p]laintiff fails to explain how [they] could resolve" the Ohio detainer matter when the "federal government does not have authority to demand that Ohio rescind its warrant." Reply in Supp. of Fed. Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 5. Plaintiff remains subject to the Ohio warrant and detainer regardless of the BOP's filing error or whether these defendants failed to notify him of the detainer's existence.

Because plaintiff cannot demonstrate defendants' duty, breach of that duty, or a causal relationship between the breach and any injury he stands to suffer, the negligence claim fails.

*B. Judicial Review of Program Participation*

The Attorney General may terminate protection for a Program participant if the

participant "substantially breaches the [MOU] entered into . . . pursuant to [18 U.S.C. § 3521(d)], or who provides false information concerning the [MOU] or the circumstances pursuant to which [he] was provided protection." 18 U.S.C. § 3521(f). "The decision of the Attorney General to terminate . . . protection shall not be subject to judicial review." *Id.* Plaintiff seeks review of the Attorney General's decision to terminate his Program participation on the ground that his return to Ohio will place him "in great risk of serious injury, and or death, in the future." Supp. Mem. at 1 (emphasis in original). To bar a challenge to the Attorney General's decision, plaintiff contends, amounts to a "violation of [his] Fourteenth Amendment Protection under the U.S. Constitution." *Id.* "The decision not to protect [his] life . . . is going to cost [him] his life at some point, if not at this prison then another." Aff. and Objection to Defs.' Mot. to Dismiss, or Summ. J. on Pl.'s Joined Compl. Under 42 U.S.C. [§] 1983 [Dkt. # 12] at 2.

There is no judicial review of the Attorney General's decision to terminate participation in the Program. Both plaintiff's claim for review of his termination and his claim for reinstatement into the Program must be dismissed for lack of jurisdiction. *Boyd v. T'Kach*, 26 Fed. App'x 792, 794 (10th Cir. 2001) (rejecting plaintiff's "claim[] that the bar on judicial review under § 3521(f) is unconstitutional" and affirming district court's denial of injunctive relief to reinstate participation in the USMS Witness Protection Program); *United States v. Gigante*, 187 F.3d 261, 262 (2d Cir. 1999) (per curiam) (affirming district court's dismissal of prisoner's request for return to the witness protection program); *Butler v. Attorney Gen. of the U.S.*, No. 08-1258, 2008 WL 2844023, at *1 (D.D.C. July 23, 2008) ("The Court lacks jurisdiction over the claim for injunctive relief seeking plaintiff's return to the witness protection program."); *Newman v. Gonzalez*, No. 05-CV-5215, 2007 WL 674698, at *1 (E.D.N.Y. Mar. 5,

2007) ("[Plaintiff's] demand that this Court compel the [DOJ] to place him in the Federal Witness Security Program in order to shield him from dangers allegedly caused by his cooperation with the government calls for relief which the Court is without jurisdiction to provide.").

III. CONCLUSION

Plaintiff cannot demonstrate that defendants have breached a duty to inform him of the existence of the Ohio detainer or that they will cause his return to Ohio where he is at risk of serious personal injury or death. He thus fails to make out a negligence claim, and summary judgment will be granted for defendants on the FTCA claim. Plaintiff's claim pertaining to Program participation and those against defendants Harley G. Lappin, John Clark and Paul O'Brien in their official capacities will be dismissed for lack of subject matter jurisdiction. Accordingly, defendants' motion to dismiss or for summary judgment will be granted. An Order accompanies this Memorandum Opinion.

/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR KOTELLY
United States District Judge

DATE: Aug. 1, 2011